KUSKIN, J.T.C.
Plaintiff appeals an assessment of Transfer Inheritance Tax with respect to an Individual Retirement Account (referred to hereafter as “the IRA”) inherited by him from his sister. Plaintiff contends that, in determining his tax liability, the value of the IRA should be reduced based on the federal and New Jersey income taxes payable in connection with its distribution. Defendant contends that any such reduction in value is prohibited by statute and by the New Jersey Supreme Court’s decision in In re Estate of Romnes, 79 N.J. 139, 398 A.2d 543 (1979).
The parties have stipulated the following facts. Rita D. Carlin, plaintiffs sister, died on April 3, 1998, unmarried and without children. Plaintiff was her only beneficiary. At the time of her death, Ms. Carlin’s assets included the IRA which had a face value of $1,182,660.96. The Beneficiary Designation for the IRA named plaintiff as the sole beneficiary “if living.”
The inheritance tax return filed by Ms. Carlin’s estate disclosed the existence of the IRA but reported its market value as $672,369. An explanation included in the return stated that the face value of the IRA had been reduced based on the income taxes which would be payable by plaintiff and asserted: “When an individual dies owning an IRA, the value to be received by the individual is the actual amount received after the payment of income taxes .... Therefore, the value of an IRA for inheritance tax purposes must be reduced by the income tax liability which aiises out of the transfer of the account or trust.” The return estimated the federal and New Jersey income tax liability with respect to the IRA at $439,126 and $71,166, respectively, calculating the taxes “using the beneficiary’s current income tax rate and current filing status (joint),” but assuming that the IRA was the beneficiary’s only income.
New Jersey Transfer Inheritance Tax is computed “upon the clear market value of the property transferred” subject to certain specific deductions, none of which expressly includes income tax liability, “and no others.” N.J.S.A. 54:34-5. Plaintiff contends that his claimed reduction in the taxable value of the IRA is not a *547 deduction under N.J.S.A 54:34-5. He characterizes the reduction as a discount in value resulting from the income tax liability inherent in the IRA. Defendant responds that plaintiffs attempt to reduce the taxable value of the IRA represents an effort to take a deduction not permitted by N.J.S.A. 54:34-5 and further contends that, even if the reduction in taxable value is treated as a discount to clear market value, the discount is not allowable under In re Estate of Romnes, supra 79 N.J. 139, 398 A.2d 543.
The Romnes decision is critical to the determination of this appeal. Accordingly, a detailed explanation and analysis of that decision is warranted. There, the executors of the estate of Haakon I. Romnes sought a reduction, based on income tax liability, in the value for Transfer Inheritance Tax purposes of an annuity providing annual fixed income payments to the decedent’s widow for the duration of her life. The fund from which the annuity was to be paid was accumulated during the decedent’s lifetime from contributions to a pension plan by his employer. Income taxes on contributions to the fund were deferred, and, as a result, the annual annuity payments to Mrs. Romnes were subject to federal income tax. The estate argued that, as of the date of death, the deferred tax obligation was a burden upon the annuity payments to be received by Mrs. Romnes, and reduced their value. “Otherwise expressed, it is argued that since Mrs. Romnes will never enjoy in a beneficial sense that portion of her annuity payments that must be devoted to paying income taxes, she should not now be required to pay an inheritance tax upon what she will never beneficially receive.” Id, at 143, 398 A.2d 543. The estate sought a value discount equal to the taxes payable by Mrs. Romnes with respect to the annuity payments, assuming each payment was added to her other income.
Tn analyzing the estate’s argument, the Supreme Court defined “clear market value” under N.J.S.A. 54:34-5 as the equivalent of fair market value, that is, the price which would be paid by a 'willing buyer to a willing seller when neither is under compulsion to buy or sell and both parties have reasonable knowledge of the relevant facts. Id. at 144-45, 398 A.2d 543. The Court commented that, in determining the clear market value of assets for *548 which there is not an active market, a court must “create a hypothetical buyer and a hypothetical seller, whom we then place in a hypothetical market place. We attribute to each of these persons all information which might affect value, and then, weighing all relevant factors, decide how they would reach a price satisfactory to each.” Id. at 145, 398 A.2d 543. This price or value must be determined objectively without consideration of any factors personal to either the hypothetical buyer or the hypothetical seller. “The use of an objective standard necessarily precludes resort to any factors personal to the seller or the buyer. Courts have consistently so held.” Id. at 147, 398 A.2d 543.
In applying these principles to the annuity in question, the Supreme Court concluded that neither a hypothetical seller nor a hypothetical buyer would be concerned with Mrs. Romnes’ tax liability.
A hypothetical purchaser of such an income interest as this annuity would be interested in the annuitant’s health, in her life style, and in the solvency of the payor... He would be utterly unconcerned with the annuitant’s personal income tax picture.
Nor would a hypothetical seller, about to divest himself of the income interest, be concerned in any way with a presumptive future liability he would never be called upon to meet. As soon as he divested himself of the interest, the prospective future liability w'ould cease to exist. The same would be true if Mrs. Romnes herself is thought of as the seller. She would have no interest in a prospective liability that was about to end.
Finally, is there any even remote possibility that Mrs. Romnes would accept as the purchase price of her annuity the amount of money that she asks the State of New Jersey to accept as being the value of this asset? There is of course no such possibility.
[Id. at 148-49, 398 A.2d 543.]
The Court also noted that the result of permitting a valuation discount calculated in the manner suggested by the estate would be that the wealthier the recipient, the greater the tax liability attributable to the annuity (because of the graduated tax rates under the Internal Revenue Code) and, therefore, the greater the discount in value which would be claimed.
Thus it would follow that the rich would pay a smaller [transfer inheritance] tax than the less affluent and the very rich less than the rich. This rather startling result must again rest upon presumed legislative intent. But of course neither this nor any other tax statute has ever been intentionally drafted to classify taxpayers *549 according to wealth and then impose graduated taxes in such a way that the richest pay the least.
[Id. at 153, 398 A.2d 543.]
Plaintiff contends that Romnes is not controlling because that case dealt with an income interest payable over the beneficiary’s lifetime and not with a lump-sum distribution. Plaintiff further contends that the concern expressed in Romnes as to wealthier taxpayers paying lower transfer inheritance tax than less wealthy taxpayers can be satisfied by calculating the valuation discount in a manner different from that urged in Romnes. Plaintiff suggests that the tax liability attributable to the IRA should be calculated without regard to any other income of the beneficiary, that is, calculated as if the IRA proceeds were the only income of the beneficiary for the tax year in question. Although plaintiff does not contend that the valuation discount must equal the tax liability so calculated, he contends that the tax liability is the appropriate basis for defendant to determine the appropriate discount.
The essence of plaintiffs argument mirrors the dissenting opinion in Romnes. There, Justice Handler noted that the clear market value to which the Transfer Inheritance Tax refers is the “beneficial interest of what is actually received by the transferee, since it is tJuib interest which is the subject of the transfer inheritance tax assessment.” Id. at 159, 398 A.2d 543. He concluded that federal income taxes should be considered in determining the value of the annuity because the taxes “are an expense or liability which arises with the actual creation of the pension itself.” Id. at 161, 398 A.2d 543. He also commented that the majority opinion would result in imposition of transfer inheritance tax “on a portion of the beneficiary’s income which she could never have received because it was taxable upon its creation and was subject to taxes upon its transfer to her with the death of decedent.” Id. at 164, 398 A.2d 543.
I conclude that the majority opinion in Romnes governs the taxability of the IRA received by plaintiff. Preliminarily, I note that Romnes treated the claim for reduction in value not as a claim for a deduction under N.J.S.A. 54:34-5, but as relating to the “clear market value” from which any authorized deduction would *550 be taken. I must treat plaintiffs claim in a similar manner, and, consequently, I reject defendant’s contention that plaintiff seeks a deduction not authorized by statute. Plaintiff seeks the same relief as the Romnes estate, that is, a reduction in clear market value.
Although Romnes does not require denial of plaintiffs claim as an unauthorized deduction, the Supreme Court’s holding nevertheless precludes granting plaintiff the reduction in value that he seeks. Both the IRA in issue here and the Romnes annuity were payable from funds accumulated on a tax-deferred basis. Consequently, liability for federal and state income taxes was inherent in both the IRA and the Romnes annuity. The recipient of either such fund would be subject to that tax liability and thus would never enjoy the face amount of the fund. In refusing to permit a value discount based on income tax liability as calculated by the estate, the Supreme Court in Romnes determined that taking that liability into account would require an abandonment of the well-established objective standard of valuation and would necessitate a valuation based on the-tax circumstances of the beneficiary.
Plaintiffs suggestion for calculating tax liability is not an acceptable solution to the problem which concerned the Supreme Court. Plaintiff asserts that the valuation discount should be based on the portion of the IRA which will be required to pay federal and state income taxes, regardless of any other factors affecting the beneficiary’s income tax liability. Under plaintiffs proposal, however, the valuation discount allowed would not necessarily reflect the portion of the IRA which actually must be dedicated to the payment of income taxes. This is not readily apparent in the context of an IRA fund of almost $1,200,000. This amount most likely will create an income tax liability at the maximum tax rate regardless of the identity of the beneficiary. Therefore, a valuation discount based on the tax liability attributable to the IRA fund alone, without regard to a particular beneficiary’s other income or deductions, is likely to reflect accurately the tax liability of any beneficiary attributable to the IRA regardless of his or her other income or deductions. If, however, the IRA were a much lower amount, then the actual income tax liability attributable to *551 the IRA could be affected significantly by the beneficiary’s other income or deductions. Depending on the amount of the IRA fund, that tax liability could range from zero, if the IRA amount is not sufficient in itself to require payment of income taxes and the beneficiary has little or no other income, to taxes at the maximum rates if the IRA fund (whatever its amount) is added to substantial other income earned or received by the beneficiary.
A valuation discount calculated on the basis of a hypothetical tax liability assuming no other income, therefore, would run the risk of being inadequate or excessive. The discount could be inadequate if, for example, the recipient of a $1,200 IRA (which, in itself, would not result in any income tax liability, I.R.C. § 6012; N.J.S.A. 54A:2-4) has other income which results in taxation of the $1,200 amount at maximum income tax rates. The valuation discount could be excessive if, for example, as a result of other deductions available to the particular beneficiary, he or she is not required to pay the tax calculated without taking into account those deductions. Thus, if plaintiff were to make substantial charitable contributions during the year he received the IRA, his tax obligation with respect to the IRA amount could be reduced. The valuation discount could also be excessive if, as permitted by the Internal Revenue Code and Regulations, plaintiff elected to receive the IRA not in one lump sum but in five annual installments, or elected to purchase an annuity with the IRA. See I.R.C. § 408 and Treas. Reg. § 1.408-2(b)(6)(7)(1998) (setting forth distribution requirements and options upon the death of a beneficiary). In either event, plaintiffs aggregate tax liability attributable to the IRA distributions could be substantially less than his liability in connection with a lump-sum distribution. Therefore, under any of the foregoing circumstances, if plaintiff received a valuation discount for Transfer Inheritance Tax purposes on the assumption that the sum of $1,182,660.96 was taxable to him in one year, the discount could be far in excess of the amount necessary to preclude payment of Transfer Inheritance Tax on the portion of the IRA which he will never receive or enjoy.
The law is well established that each taxpayer should pay his or her fair share of taxes. See Phelps Dodge Industries, Inc. v. *552 Director, Div. of Taxation, 8 N.J.Tax 354, 358-59 (1986). If Transfer Inheritance Taxes are reduced on a purely artificial or hypothetical basis, without taking into account the actual amount that will be received by the beneficiary, then the beneficiary may pay less than his or her fair share of taxes, or may pay excessive taxes. Calculating a proper valuation discount, therefore, must involve consideration of the actual tax circumstances of the beneficiary. However, consideration of those circumstances results in a deviation from the objective standard of value applicable for purposes of determining Transfer Inheritance Tax. In re Estate of Romnes, supra, 79 N.J. at 147, 398 A.2d 543.
Plaintiff is correct in asserting that, without a discount in the value of the IRA, he will pay Transfer Inheritance Tax on a portion of the IRA which must be used to pay federal and New Jersey income taxes. There appears to be some degree of unfairness in this result. But, as the preceding analysis demonstrates, allowing a discount based on income tax liability is not appropriate for two reasons: 1) determining the proper discount requires abandonment of the objective standard of value, because calculating income tax liability without regard to the actual tax circumstances of the beneficiary could result in an excessive or inadequate discount, and 2) the Romnes decision precludes such a discount.
For the foregoing reasons, I conclude that plaintiffs appeal must be denied. Judgment will be entered affirming the assessment of Transfer Inheritance Tax set forth in the defendant’s Final Determination dated February 25, 2000, plus interest to the date of payment of the tax due.